We have for the appellant, Lawrence J. Weiner, and for the appellee, who will be arguing? So you've advised our bailiffs? Yes. Mr. Weiner. May it please the court, this is actually one of eight pending cases and another four are in the pipeline coming up before your honors in this district regarding primarily ALJs. And was one of those cases just recently dismissed? Yes. Yes, the parties have settled their differences in that regard, I was advised. But there are several other cases and this case involves one ALJ at the Department of Human Services and six ALJs at the Department of Health Care and Family Services. But there are in the pipeline the ICC ALJs, there's the Chief Hearing Officer for PTAB, there's ALJs in the Illinois Commerce Commission, six ALJs in the Human Rights Commission, and in addition to the ALJs you're going to be getting some SPSA cases. So we're coming up to the higher levels of what's left of the remaining employees in the state of Illinois other than your honors and employees of the Illinois Labor Relations Board and Illinois Educational Labor Relations Board that are statutorily excluded from being members of the bargaining units. I might start by saying that there's been a metamorphosis beginning around two years ago relative to affording the state and other employers such as the City of Chicago, the grantee hearings in majority representation cases. This happens to be one of those cases. This is an early case and as you might note what used to happen in these cases since the inception of the Act and until around two years ago was that a petition for representation certification would be filed. The employer would file a position statement and if in that position statement without referencing, usually not even having exhibits, if there were statements made that would create a question of representation or a question regarding exclusion or inclusion or a question regarding fragmentation, there was a hearing. We used to have hearings all the time and pretty pro forma. What happened in this case and this is one of the initial change of practices, let's just call it, was that the petition was filed, the employer filed a position statement and in the traditional way, as you see these make statements of fact, which I'm relying on, either reverse the decision or at least get back and have an evidentiary hearing, but they make statements of fact. And I want you to know that in all these cases, there's no response requested or filed by the unions. It's all being handled by an administrative logic. And in all these cases, except where they rarely grant the hearing, and you're going to have the PSA option was, I just filed that petition for administrative review yesterday, you have 1,250 employees, PSA option was very scarce. No hearing. And in that case, there were literally a portion of this room filled with exhibits at the day, sworn verifications, everything that you can imagine. A full-scale hearing that had been produced in a full-scale hearing except the actual witness testimony. No hearing except for the few. It was less than 10 percent. So you get a certification. So we've now filed our petition for review. So going back to the story. So in this case, the traditional position statement is filed. And the administrative law judge, sua sponte, says, I've looked at the record, and that's the record. You have the record. You have the entire record in the appendix. I've looked at the record. I don't see that there's any questions of law effect. This is a pro-formal letter now. It comes out automatically with one nuance. I'll get to that in about 10 seconds or 20 seconds. And I find that there's no issues of representation to decide, ergo, I'm recommending to the executive director that the unit be certified. And the next day, usually, the next day, or that day, the unit is certified. No hearing, no RDO, no hearing before the board, nothing. It's a done deal. Now, the more recent cases, and you'll be getting these, you have them, some of them pending before you, there's a nuance to that. And it is this. After that, instead of that letter, that form letter being presented at that time, now there's a second letter that goes out, and it's a letter that issues a And the rule to show cause is to show all, and they use that word, all evidence in support of your objections to the unit. There's no rule to show cause in this case. This is an early case. There was not even a rule to show cause issue. So not only are we talking about tradition that doesn't exist in the statute, we're now also talking about a procedure that isn't before us, and apparently has been implemented, and we'll have the opportunity to address it at a later time. Right. Then why are we talking about it? Because I think that these cases, and we are talking about trying to consolidate these cases before your honors for determination, because they're all sort of Would it be okay if we decide not to consolidate them? Oh, of course, your honors. Then isn't it at the same kind of discretion that is available to the ALJ and to the director? I mean, they may have a hearing. Oh, of course. If they think, and they may not. And the question is, is that determination reasonable? Yes. Well, that's But I don't understand this, that traditionally, this is, I mean I understand that from a practitioner's point of view. Right. But sandbagging is part of bridge. Well, I think I got some Trump cards here. I mean, that really is the argument, isn't it? I mean, on the tradition. This is the way we've always done it. In doing it that way, we had the opportunity to amplify what our position was, and now for either political or policy or reasons that involve this nuance that you've talked about, we're not getting these hearings. So the response to that is, for the future, maybe we have to put more in at the outset to assure that we get a hearing. But in the interim, we've got this whole bunch of cases pending where we think we got shafted out of having a hearing. Well, there's two issues that Gerardo raises, and I'm just going to mention the first one, but address the second one first. Obviously, the issue is in making the determination, which is obviously within their discretion because it's an investigatory, but it's supposed to be a truth-seeking investigation. Believe me, it's not. It's an investigatory process. So obviously, they have discretion, and the statute does allow them to both dismiss petitions and to make decisions on it. But the point, the reason I mention all this is that I'm suggesting that the court reconsider or consider, because I don't know if this court's ever directly addressed this issue. The first issue it just did in the State of Chicago, but it applied a clearly erroneous standard. But I think what I'm getting to is that these whole proceedings have become so summary in nature that they're the equivalent of a summary decision or summary judgment type of a determination where we never get a hearing, the board never makes a determination, there's no RDO and no hearing. What's an RDO? I'm sorry. Recommended Decision and Order. So when you get a hearing, then the ALJ files a recommended decision, and if there's no exceptions taken, then that becomes final, which, by the way, relates to this case, too, in the sense of the power of these people. But going back to your question, and then those exceptions filed, and then the board itself makes a determination. We don't have any of those in these cases. It's a summary decision. And I think, and we've cited some cases in appeals that were not filed in these boards, but the Human Rights Commission. To me, one of the most important things about this case and all these cases is what the standard of view is. And I think the court could at any time consider that. And all I've asked is the court to consider it because the standard for a summary review of a summary decision, such as a Human Rights Commission decision, is de novo. It's not clearly erroneous. And I think if it's clearly erroneous, that's as very high as Your Honor's will. No, it's a very high standard, you know, and not even against the manifest way. It's also a high standard. But where there's a summary decision, there should be treated as a summary decision. That being said, I'll go to the next point. Your Honor does raise a point. The second part of that question, Your Honor, was, you know, so they made a decision. So even if it's clearly erroneous, if it is clear that a mistake has been made, and this court said that, the Supreme Court said that, you know, then you should reverse, either reverse or reverse and remand for a new hearing. For a hearing, I'm sorry, we don't get a new hearing. A hearing. And if we can't get a reversal in here, and I could understand that easily, we're requesting at least that it be sent back for a hearing in a number of areas. One of which, and I'll just talk about it for a few minutes, is fragmentation issue. I'm well aware of this court's determination on fragmentation. And where it laid out a roadmap for litigants, and particularly the employers, as to, you know, an analysis of what the remaining people do in terms of whether fragmentation is proper. That came after, though, this, that decision came after all of this happened in this case. So I'd like a hearing, a remand for a hearing on the fragmentation, so that we can follow this court's criteria and roadmap as set forth in its 2009 opinion regarding the DHS attorneys in the litigation management division. But, you know, now going back to the merits of the case, in that decision, in that decision, these ALJs are the ALJs that the attorneys that this court held were not managerial. These ALJs are the very ALJs that those attorneys appeared before. That's a coincidence, but that's the truth. And this court, albeit indicted in dealing with the fragmentation issue, said this. You guys said this. The record reveals that the option 8Ls in the agency consist not only of six staff attorneys in the Bureau of Administrative Litigation, who serve as advocates for the agency in administrative hearings, but also administrative law judges, hearings referees, and a staff attorney in the Office of General Counsel. It is not difficult to surmise why these two groups of attorneys are in different divisions of the agency. The administrative law judges and hearing referees preside over administrative hearings and write recommended decisions. The staff attorney in the Office of General Counsel, quote, rules on, close quote, the recommended decisions of the administrative law judge and exceptions thereto. While the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the Office of General Counsel are expected to be impartial decision makers. The integrity of the adversary system demands a rigorous segregation of those two functions. And that's what I'm asking your honors to do here today. To recognize that those union attorneys who are appearing before these ALJs, and whom you've included in the unit, you know, under a seminal opinion, and your opinion is the last one issued, but summarizes all the law in the area. Under your own opinion, these administrative law judges should be excluded from the unit, because they must be impartial decision makers. They can't have these union lawyers appearing before them in this context, because that adversary system demands a rigorous segregation of these two functions. Was PLA requested in our case? Has a PLA been filed? I didn't handle this case. It's also unfair, Mr. Weiner, for you to come down here and cite us back to us. That's unseemly. Bring it up to the ALJ. Don't remove my membership. Who was on that panel? Your Honor. Your Honor was one of them. Judge Appleton, I think, wrote the opinion, and Judge Steitman concurred. So that's a good panel. That's a good panel. If I may say so. Oh, I can't do it. You're killing me. I need to have the name. You get five minutes for the vote. I have five minutes. Oh, I have five minutes. All right. So now we're getting to, Your Honor, the next question raised. Even if there's a clearly erroneous standard, based upon the undisputed, uncontested, unrebutted facts of record, because that's, they're fact stated, are, should we have a hearing? Have we said enough to have a hearing on the issue of whether these people are managers, or Mr. Kirliak, with respect to Mr. Kirliak, whether he's both a manager and or a supervisor? Obviously, I mean, the facts are set forth. The union never contested them. The union never did anything. And so I think, Your Honor, at least at this stage of the litigation, should I respectfully submit, accept those facts, and then make a determination. And I respectfully say that that determination should be that they are managers, both under the traditional test and under the alternate test. And that Mr. Kirliak is a supervisor. He has met at least one, if not more, certainly more than one, of the 11 elements that must be shown to be a supervisor. It's represented that he does this with the equivalent of independent authority and judgment and that he spends the primary 60 percent of his time doing it. So at least there's enough there, I think, if you don't want to just clearly just reverse it, because I think there is enough to reverse that of supervisory. At least send it back for hearing and let's prove that issue. As to the managerial, I can't tell you judges anything more than you don't already know about judging, and administrators know about judging. You obviously have to have an independence. As to the DHS ALJ, that judge is ruling on the very existence of the, whether the people are put on the health care registry, which could result in them losing their license, which could result in the termination of their employment. As to the union members, she's ruling on union members' right to continue practicing, continue their employment before DHS. If that's not an actual, much less an inherent conflict, I've never heard of one that isn't. So for her to be a union member and be ruling on union members, to me seems just blatantly, patently a clear mistake, an erroneous decision, a clearly erroneous decision, and I'll see it during the rebuttal. Thank you, Mr. Weiner. Ms. Purcell? Good morning, Your Honors. My name is Sharon Purcell. I'm the Assistant Attorney General for the Illinois Labor Relations Board. What happened in this case is what the Act expressly contemplates and provides for and permits, and that the Board's regulations, which the Board promulgated pursuant to its authority to do so, effectuates. The union files petitions asking on behalf of employees who wish to be represented in the bargaining unit. The Board has to investigate the petition. Was there an investigation done here? The investigation follows the Board's regulations, which is a party that is opposing or believes that the union unit is inappropriate or certain employees should be excluded for statutory reasons, have a burden of showing, bringing that forward. And that's part of the investigation. That's where they get the time to get to file their position statement. And the rules provide, in particular to this case, because it's a majority interest case, which is still a fairly new procedure under the Act, having been implemented and enacted back in 2004, I believe it was. And as the Supreme Court stated in County of DuPage just last year ago, December, the purpose behind that was to eliminate the employer delay that had been taking place under the traditional filing for a representation election. So everything is more expeditious. And really, I mean, it's the Board's responsibility to make sure that that stays as tight, you know, the process stays as tight. So you still haven't answered my question. Was there an investigation done here? Certainly there is. The investigation is, they file the petition, the employer objects to it, and files its position statement as to why this is not an appropriate unit. And they're supposed to give their reasons to the extent known, which means, you know, and the employer is the one who owns the information on what the employers do, what their jobs are. And so it makes sense that the employer has to provide this information. If the employer needs extra time to get that information together, of course they can request that extra time. After the Board agent who is investigating the petition looks at what was submitted by the employer and sees what they submitted. Now in the City of Chicago, as that case reads, the City of Chicago, with its position statement, submitted a number of documents, including job descriptions and various other documents to support its position that it was an inappropriate unit. And which would then maybe lead the investigator, as they're looking at all this, to think that there's some issue that they want to know more about. Give me, you know, so they issue a show cause. Give me information on this. In this case, the petition statement comes in and it says, with regard to the health care and family services, that these ALJs are managerial as a matter of law. It doesn't say as a matter of law. It doesn't provide, which would be simple enough, tell me under what statute, under what case law, why are these ALJs so similar to the Cook County State's attorneys, for instance, or all state's attorneys, that they should be a matter of, you know, excluded as a matter of law. Well, there's nothing there. So there was no investigation. That is, but the employer has the... You don't send somebody out in the field to the employer's place of business and watch what these people do or look at their work. There's really no reason to because the employer has that information. The employer knows what its employers do. Just to be clear, the investigation consists of reviewing what has been submitted. Exactly. And also reviewing, one side or the other might ask for time to submit more. Right. The extension in time, I guess that's what the extension in time relates to. Well, they may need, that's right, they may need time to get the information together. And since the employer has the information, the union is much less likely to have information on what exactly the employers are doing, the employees are doing. Except that they're hopefully going to represent the employee, who mostly does. See, I mean, because under the Act, public employees are given the right to, you know, it gives them the right to organize and the exclusions are very, very narrow. So when a petition comes in, it's like, well, okay, this petition, they're seeking it, is there any reason why we should exclude these people from the protections of the Act? So that then is where somebody who wants to exclude them has the burden of bringing that forward and who else is going to have that information? I think potentially both sides have the information. I agree with you that it's the employer's burden. It is the employer's burden. Would you agree with Mr. Weiner that there has been a change in that there are fewer hearings and that it is more likely that the ALJ will act upon that which is submitted rather than directing that a hearing be conducted? Not having record evidence. I think that once, with the enactment of the majority interest petition provision, it is more incumbent to, there may be fewer hearings. I really, my information would be that, well, it's hard to, you know. Yeah, if you don't have anything. I don't have statistics or anything, but it's very likely the case. Well, you did make several references to it being compact and tight and expeditious, which is kind of the opposite of, okay, let's have some more information and let's have a little bit more time and let's have a hearing. Well, I mean. Well, that's not the opposite, but I mean. The investigation is not employer, it should not be employer-driven, which it seems here is what, say, well, I'm going to give you, I'm going to give you a position statement that says, basically tracks the language and the definitions of the act. You know, these managers do this and this and this and this, and then when you ask me for more, if you ask me for more, then I will give you the rest of my information. But the rules provide that the investigator, should the AOJ investigate in an MIP case, may ask for more. Now, the AOJ is going to ask for more information when something has already been submitted that would make you think, well, I need more information here. Now, in this case, if you're asserting that employees are managerial as a matter of law, what more factual information? What would you even have a hearing on? There's no, it's not factual. So now you're slowing down the process, which the General Assembly does not want slowed down, which is behind the whole majority interest petition legislation, because now you've got your foot in the door, and I'm going to, you know, and it's, we're going to do this piecemeal. But the employer has that information all the time. But don't you have to have some facts before you can determine whether a person is a manager as a matter of law? I mean, it seems to me like you're saying, if the determination is whether this person is a manager as a matter of law, you don't need a hearing. Cook County State's attorney took it from the, took the case from the Labor Board and said, we don't need for the Labor Board to conduct a hearing here, because we're looking at what the statute says. State's attorneys are the power they're clothed with under the statute. And so... So is it only if your position is covered by a statute that imbues you with managerial authority that you would be a manager as a matter of law? Those are, you know, that's the, there's, it's, it's Cook County State's attorney's case, which says state's attorneys are managers of law, and then there's public defenders. But that's also based on what their, the statutory provisions are under which they operate. And there are no other, there are no other managerial as a matter of law. Everything else has been fact-based. So if you're making that assertion, and if it, if it's as a matter of law that you're clothed with this power that, in the absence of, you know, the elected official, basically the state's attorney, the state's attorneys in office, they do their, you know, they're clothed with that authority to act in his behalf. I take it there is no statute that talks about ALJs in general, and what powers an ALJ has? Or is that covered in the Administrative Act? Every agency, as far as, I mean, I wouldn't imagine that there is because every agency has its own mission, and its own, and it's going to, in its own structure, and it's going, it should regulate in order to affect its mission, which is what, what the board does here. And, and, you know, the Section 2 of, of the Act provides that, you know, the board has to, has to provide an expeditious, equitable, and effective procedure. Now under the Majority Interest Procedure, what is going to be expeditious, equitable, and, and an effective procedure? Where the General Assembly has said, we want to eliminate delay. The board, the board has the responsibility, I mean they have to take that seriously, because that's their, that's now their legislative mandate, with regard to those cases. But the board could eliminate delay by holding to trial lines, and hearing deadlines, and things like that. The only, what I'm getting at is, their only remedy is not denying hearings, would it? It's an investigative, the representation process is investigative, it's administrative. Even the hearings are fact-finding hearings. So you're always looking for the facts. So step one, why, why, as an employer, if you believe that these employees don't belong, why, why are, why not provide that information at step one? Or as much as you have at step one. Why are, why do you need, or why not ask for more time? Where the regulations and the act both contemplate that, that there need not be a hearing. And even under the prior representation, it's always, it's under the election, where you file for an election. You're always, you're always trying to get these things, you know, it's supposed to be expeditious, because nobody can exercise any rights, which the act provides, until there's been certification, or if something's been denied, then, you know, whatever clock there is, it's going to start again. But... I want to ask you a question about something you said earlier. You talked about the fact that every agency has its own mission, and things it needs to accomplish through the administrative process. And that kind of would lead me to think that maybe then, Mr. Weiner's argument that these ALJs were accomplishing this mission, and you said that there is no statute that covers them generally, because each agency would have a different mission. Doesn't that help his argument? No. Because, well, managerial, it's managerial within the meaning of the act. And so it has specific meaning, which means that, it's, an employee to be managerial has to be, have authority, and be exercising authority, that relates to running the agency. It's establishing procedures and policies, such as preparing the budget, assuring that the agency is operating effectively. It's not, here are the policies coming down. Here, when you have a hearing, ALJ, this is what you're looking at. And here's how you're going to make your decision under that framework, and then you're going to pass that decision up, and we're going to look at it and decide. I mean, you're always, as an ALJ, you're an employee effectuating what that policy is, but that's no different than any employee. Your employer always wants you to do what they've decided their policy is, and that's your job, but you're not changing the focus, you have no authority to change the focus or mission. For instance, Cook County Hospital, or County of Cook Providence Hospital, the court decided that the attending physicians are not managerial employees. They exercise professional judgment, discretion, but they don't change, they just don't have the authority to do the things that a manager under the Act does. For instance, you might have an attending physician there and decide somebody needs a heart procedure, and they decide that on their own, and so they go ahead and they do it, but they're not going to decide this hospital now, as its policy, is going to be performing only this procedure and this procedure and this procedure, or now we're going to add on this procedure. The physician doesn't have that sort of... Or the physician says, well, I need to do these procedures, therefore we're going to put more money into the budget for that procedure. There's the difference in what's... I wanted to ask you about Mr. Weiner's argument, before your time is up, about having a union member, a member of the same union as the attorneys who are appearing in front of them, ruling on those matters. Is that an issue? No, and I don't believe that the case that he cited back to you even says that. That decision looks at, is it reasonable for these employees to go into this unit and he's talking about, well, it's reasonable in that unit because they do these different jobs. But there's no reason that... There's nothing that says now an ALJ who would be eligible, who has rights under the Act, can't be in some other union. There's already ALJs in this union. The board has internal investigators. I can't think of the case right now. Employees who investigate other employees within the same agency, they're all under collective bargaining agreements. Because there has to be such a conflict that so undermines the collective bargaining process that now we're going to think about, they don't belong in the bargaining unit. But simply because one group of attorneys organized before the other ones did and got put into a bargaining unit, or some other employees organized before these ALJs did and are now in a bargaining unit, that can't determine, and there's nothing in the Act that says, well now that's going to determine whether these employees are somehow managerial or are somehow outside of the Act, when otherwise they have all of the same rights under the Act that the employees who organized prior to them have. So there's not some limited subset of rights here that now, we grabbed out these employees and they're in a bargaining unit and there's only this many rights. And so you don't get them anymore. No, if you're under the Act, you're under the Act. And in conclusion, I would ask that the Court affirm the Board's decision. It's not merely your own. Thank you very much. May I please have the card? I'm Melissa Auerbach, I represent AFSCME. I wanted to clarify one point, which is the petition in this case does not seek to add the ALJs in the Department of Health Care and Family Services to the same bargaining unit at issue in the prior case. This Court decided that involved a different union, Illinois Nurses Association, and this involves AFSCME. And so the ALJs would not be going into the same bargaining unit as the litigators in that case. It's a different union, different bargaining unit. This petition seeks to add the ALJs in both agencies to an existing statewide attorney unit that AFSCME already represents that includes ALJs in some other agencies, hearing officers and hearing referees in some other agencies. It already includes those types of employees. The primary purpose of the Board's representation procedures are to allow the Board to carry out its function of allowing public employees to form bargaining units so that they can collectively bargain. And the employer doesn't have rights, per se, as it does in an adjudicatory right hearing. What it has is information and the ability to provide the Board with reasons why any employees are not public employees, that they fall within narrow statutory exclusions for managers or supervisors or confidential employees, and the employer can also challenge the appropriateness of the unit. But it doesn't have the right to just say, we demand hearing because we think this employee is supervisor or we think that employee is a manager, and therefore you have to hold a hearing. Because if the employer could do that, it could frustrate and delay the intent of the Act to allow employees to form bargaining units by saying, we want to have hearing just because we say this person's a supervisor, that person's a manager. It also wastes the Board's resources to say to the Board, you have to hold a hearing every time an employer asserts that an employee is excluded, even though the employer doesn't come forth with reasons. And the Board has to waste money having hearing officer time, have the LJs spend hearings, hire court reporters, to have hearings where there's been no issues, a factor of law to give the Board reason to find that it needs to hold a hearing. I do not think your answer to this question will be determinative in any way, but simply trying to understand backdrop. Do you understand Mr. Weiner's view that traditionally there were more hearings and that there has been some kind of change? And from your perspective, that change is okay because it fits within the Act. From his perspective, it's, gee, we don't know this is the best way to do it. But I want to know that. Yes, Renter. I think in the early years of the Board, if the employer came forward and responded and said, we think the unit's not appropriate, we think persons are excluded, the Board did more routinely schedule hearings. Partly things were newer. The Board at this point has developed expertise and a strong body, a big body of decisions of what's manager, what's supervisor, what's appropriate unit, which the parties are aware of, public employers including the state, and other employers are aware of that. And, you know, the Board could reasonably find, you know, we can use our resources more efficiently to let the Board agent investigate instead of automatically set it for hearing. And even if there's a hearing, it's still... But again, that word investigate really means reviewing that which has been submitted. Right. And even where there's a hearing, it's just a part and extension of the investigatory process. It's not a adjudicatory hearing. It just furthers the... It's because the Board agent determines there's more that I need than I can get from position statements. I think there's enough here that I need to hear witnesses testify to what these people do. And it's still part of the investigation. And so if the Board agent... And the ALJ here by the Board is really functioning as investigator. No, when you're saying hearing, you don't mean the rule to show cause here. No, I mean if there's an actual hearing with witnesses. It's just an extension because the ALJ who here is functioning as investigator or could be a non-attorney doing the investigation, finds that there's enough that I need to hear employees say what they do. I need to hear more evidence to see whether this is an appropriate unit. I can't do this on papers. Then I'm going to hold a hearing and find out more facts. Here where the ALJ investigating essentially found the employers making conclusory statements, there's not even enough here to inquire. For me to feel I need to inquire further, then there's no reason to issue an order to show cause or set a hearing because the employer hasn't cited anything but asserts this person's manager is a matter of the law, but there's no statute. This person's just a professional attorney. Professionals have the right to organize. This person's a supervisor but hasn't even asserted that the person uses independent judgment to carry out any direction, which is what an acquired part of a four-part supervisory task. So the ALJ of the board could reasonably find there was not even enough submitted to inquire further. The employer's simply objecting and making these conclusory statements. I don't need to object further. There's been no issue raised, and so I don't need any further investigation. And that would be reasonable. Thanks, Cecil. We will pass the board's order to be affirmed. Thank you. Roberta? Mr. Weiner, I want to start out by asking you a question. Ms. Purcell argued that your petition on most of these employees asserted that they were managers as a matter of law and that they could make that determination from the fact that there's no statute that governs these people or makes them managerial as a matter of law, and therefore there's no reason to have a hearing. So I want to hear what you think about that. Well, I'd like to rely upon the Supreme Court's words and the Cook County State's attorney where there was a statute and they relied upon the statute, but in addition they said, and they cite the statute, and of the case law describing the position of assistant state's attorneys demonstrates that the assistants have a significant managerial role in carrying out the mission of the state's attorney's office. So even the Supreme Court in the state's attorney's case relies upon case law in addition to a statute. Now, I agree with you that unlike some of your cases coming up, like the ALJs and human rights have pages and pages of regulations regarding their qualifications, their experience, their authority, their powers, et cetera. But here, as stated, I think you can have case law to support a managerial argument as a matter of law or what we call the alternative test in our field. But what's set forth, we did not prepare these positions statements, but CMS did and lawyers, but what I know in reading them is that they contain sufficient facts to establish managerial as a matter of tradition, as a matter of fact-based determination. So I'm not concerned that the argument heading in the position statement says they're managerial as a matter of law. I think Your Honor should look to the substance of what's said, and clearly they're saying that there are facts. The facts that are alleged fall directly within the criteria of fact-based determination, traditional test for managers. Second of all, there was a reference made that rules and regulations do not require a hearing. We went in, that was Your Honor's first question, but they do say this, quote, if an investigation discloses that there is reasonable cause to believe that there are unresolved issues relating to the question concerning representation, the board shall set the matter for hearing before an administrative law judge. Shall. Shall. And I believe that what was set forth in both position statements here creates reasonable cause to believe. We don't have to, to get a hearing, we don't have to prove there are, it's just there's reasonable cause to believe that there's a basis for hearing. Similarly, there are only two circumstances where a majority interest, even when a majority interest petition may be resolved without a hearing. First, if there's a determination that it's inappropriate, that's under 80 Illinois Administrative Code 1210.100B6 and 7A, or where there are no unit appropriateness or exclusion issues or any other issues necessitating a hearing. If, however, there are unresolved issues relating to the question concerning representation, which has been held to be including exclusionary issues and fragmentation issues, the board shall set the matter for hearing before an administrative law judge, and that's that B7C, and I originally quoted it to you from 1200.40 of the ILRB's rules. So, it's reasonable cause to believe, and I respectfully submit that we've established that. And the quote that I gave was a direct quote from your Honor's case. Let me ask you, if we were, if you were not to prevail, and we were to affirm, what happens next, not in the cases that are in the pipeline, but in new cases? What does the employer do? Well, we're recommending that, and you'll see it in the PSA Option 1 case, we're recommending that we just file all our... Well, we're not getting rulership clauses. Automatic. It's like a book. It's got one position statement, deny, no facts or issues. I've read the file. I've read the file, which all is in the file. We get the file. There's a statement. I've read it. I'm requesting certification. Now we get, I've read it, certification, rulership clause. We file all these boxes, tons of stuff, everything. We have to prove our case, in other words. In order to prove our case. Even though board law says we don't ever ask anybody to prove their entire case, to prove their case. But we have to do it now. So we're saying to everybody in the future cases, kitchen sink. Just submit everything. We have it all notarized. We have it all in affidavits or verifications. We have sworn statements from witnesses. We have boxes and boxes and boxes of every... Because we have to not only contest it for a position, we have to contest it as to each individual employee, which is something I hope to address in some future day. I mean, it doesn't make any sense. But, you know, if someone's on the job for two weeks, they haven't disciplined everybody. So we don't have any disciplinary records. So they're in the union. Anyway. But the point is we're recommending, in direct answer, we throw in the kitchen sink. We throw in every single piece of evidence we have. We throw in affidavits, everything. Job descriptions. All disciplines. Oh, by the way, in this case, there is independent authority shown to discipline people, to grant overtime and time off. All we have to do is satisfy one of 11 elements, not all of them. And there is independent authority alleged in these positions. But is that just Esther Curlea? Yeah, but he's the only one that's alleged to be supervising. But anyway, that's an answer to your question. We prove our case to prove our case. And we're still denying. We're still denying. And statutorily, how much time do you have to present the kitchen sink? They give us – they actually – I don't think it's – we have a statutory time to file a position statement. I think it's like 15 days. But we have – they will grant reasonable time to prepare and file those exhibits, those submissions, additional submissions. So you file a position statement and say, we're going to supplement this position statement with affidavits and additional materials, blah, blah, blah. Would you tell – No, what we do is we say we need three weeks. And the ALJ says – makes a determination. And sometimes they – we don't ever get more time. We usually get a little less time. But they're fair about it in that sense. They give us an opportunity now to file our proofs, not like what happened here. But now they're letting us file them. But we file everything now. Everything – it stacks the disciplines on you. Okay. Thank you, counsel. Have a nice day, Ronald. Thank you.  Good-bye.